**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHAUNA I. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 08-0382 (RJL) |
| | ) | ECF |
| HENRY M. PAULSON, JR., | ) | |
| Secretary of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

For the reasons stated below, Plaintiff, Ms. Shauna I. White, respectfully, files this Opposition to Defendant's Motion for Partial Dismissal of the Complaint she filed in this action. Plaintiff's EEO Complaint consists of three allegations: (1) discrimination based on sex under the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k)("Act"); (2) non-selection (race and sex); and, (3) retaliation.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff is a former HR Program Coordinator, NB-04, at the Office of the Comptroller of the Currency ("OCC" or "Agency"), a bureau of the United States Treasury Department, Washington, D.C. Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Partial Dismissal ("Def's Memorandum"), at 3. Plaintiff adopts Defendant's description of the procedural but not its factual history of this case as described on pages 6 through 8 of Defendant's Memorandum.

Plaintiff filed her Formal Complaint of Discrimination ("Formal Complaint") on

March 7, 2006.  On April 5, 2006, the Agency accepted two of Plaintiff's claims for

investigation, dismissing her claim of discrimination based on sex (female), under the

Act.[1]  The basis for this allegation is that upon returning to work from maternity leave on

October 3, 2005, Plaintiff was prevented from resuming her position as HR Program

Coordinator, and was assigned menial tasks instead.  Formal Complaint, Def's

Memorandum, Exhibit 6, at 3.  The Agency dismissed that claim on the ground that

Plaintiff failed to initiate EEO counseling on a timely basis.  Def's Memorandum, at 6.[2]

It is undisputed, however, that Plaintiff visited an EEO counselor on October 11, 2005.

Plaintiff was misled by the Defendant.  She was informed, incorrectly, that she

could pursue a solution through the Agency's ADR process, while, at the same time,

preserving her right to file an EEO complaint later.  Once Plaintiff brought these facts to

the Agency's attention, it should have, consistent with 29 C.F.R. 1614.105(a)(2),

extended the 45-day time limit for initiating counseling.

The Plaintiff returned to work from maternity leave on October 3, 2005, and

found that she had no workstation, and no work to do.  Def's Memorandum, Exhibit 10,

Affidavit of Shauna I. White (June 16, 2006), at 34.  The Plaintiff first sought counseling

about this matter when she met with the Agency's EEO representative, Laurie Cymbor,

on October 11, 2005, well within the 45-day time limit to initiate counseling.

According to Plaintiff's notes of the conversation, which she prepared the same

day, Ms. Cymbor advised her that she had two choices:  file an informal EEO complaint

---

[1] By letter dated April 14, 2006, in response to Plaintiff's letter dated April 12, 2006, the Agency amended
the accepted claim as follows:  "Whether the plaintiff was discriminated against on the basis of her race
(African American), sex (female) and retaliation, when on December 2, 2005, she was not selected for the
position of Program Analyst, NB-03430-IV, announced under vacancy announcement number MP-HQ-06-
024; and when, on March 6, 2006, she was assigned to the position of HR Assistant, NB-203-IV."
[2] Plaintiff, pursuant to 29 C.F.R. § 1614.107(b), filed her appeal of that dismissal with the EEOC
Administrative Judge on February 6, 2007.  As of March 2, 2008, when Plaintiff filed her Complaint in this
matter, the AJ had yet to rule on that appeal.

within 45 days, or participate in the Defendant's ADR program. Exhibit 1, Affidavit of Shauna I. White (Feb. 5, 2007); Exhibit 2, Handwritten Notes, Shauna I. White (Oct. 11, 2005).

In response, Ms. Cymbor stated: "discrimination can be hard to prove." "must be sure[.]" "Do I really believe they took me out of my job because I was away on maternity leave;" "Last option always open if the mediation does not" work. Exhibit 3, Affidavit of Shauna I. White (Feb. 28, 2007), ¶ 7. "It was clear to me that Ms. Cymbor was referring to my ability to file an EEO complaint when she told me that the last option is always open if the mediation does not work." *Id*. ¶ 8. According to Plaintiff's notes, Ms. Cymbor then stated that "If I go fair I still have the option to change & go EEO. Sometimes through dialog I can feel that due to progress in fair or statements that I think now that I look at it this is discrimination due to _____ it can be recognized later." This last portion of Plaintiff's notes reflects Ms. Cymbor's statement that if Plaintiff chose FAIR, she still would have the option to change her mind and file an informal EEO complaint. *Id.* ¶¶ 9, 10. Ms. Cymbor also told the Plaintiff that if, through the ADR process, she discovers facts which reinforce her conclusion that she was discriminated against, "*it can be recognized later.*" *Id*. (Emphasis added.) Plaintiff chose to participate in the Defendant's ADR program, which, unfortunately, was not successful.

Defendant also argues that Plaintiff told Ms. Cymbor that she, the Plaintiff, did not believe the actions taken by management were discriminatory. Def's Memorandum, at 4. In light of the extremely serious allegation of discrimination involved, this assertion strains credulity.[3] Plaintiff, instead, told Ms. Cymbor something completely different –

---

[3] The formal complaint effectively alleges a "constructive demotion" whereby Plaintiff, following her return from maternity leave, was replaced in her position by the person she trained, Theresa Hockaday.

she said that she was not sure "that I had a case I could win."  In other words, Plaintiff

was unsure she could prove that the Defendant's action in summarily removing her from

her position – upon her return from maternity leave – was discriminatory.  Exhibit 3,

White Affidavit, at 2, ¶ 6.  Ms. Cymbor's reply to Plaintiff's concern was inappropriate –

she told her that "discrimination can be hard to prove" and that she "must be sure[.]"

There is, of course, absolutely no requirement in Title VII, or in applicable EEOC

regulations, that an employee must be "sure" that discrimination exists even before she

files an EEO complaint.

Finally, Defendant asserts, in effect, that Ms. Cymbor's statements do not matter

because the Plaintiff signed an October 19, 2005 mediation agreement, "which clearly

stipulated the time frames for initiating EEO counseling."  Def's Memorandum, at 5-6.

According to paragraph 1 of that agreement,

> I understand that a claim of discrimination based upon race … or disability
> may, at my discretion, be raised under the EEO administrative complaint
> process or through the negotiated grievance procedure if you are a
> member of the bargaining unit, but not both.  I understand that I will have
> exercised this option at such time as I timely file a formal complaint of
> discrimination … or timely file a grievance in writing under the negotiated
> grievance process, whichever event occurs first.  However, I understand I
> am not precluded from seeking EEO counseling as set forth in paragraph
> 2.

This paragraph is anything but clear and would not, to a reasonable person,

override Ms. Cymbor's repeated and mistaken advice.

## **STANDARD OF REVIEW**

---

Plaintiff is African-American with an undergraduate degree; her replacement is white, with a high school
education.  Ms. Hockaday also was selected over Plaintiff for the position of Program Analyst, which
effectively was Plaintiff's old job.  Def's Memorandum, Exhibit 6, at 3-4.

Defendant filed its Motion for Partial Dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Under either rule, a motion to dismiss requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations, as the Court may neither weigh evidence nor evaluate the credibility of witnesses.  *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

Courts construe the complaint liberally in the plaintiff's favor, taking all the facts alleged as true, and giving the plaintiff the benefit of all reasonable inferences from those facts.  See *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  In deciding a motion to dismiss, the question is "not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## ARGUMENT

I.    **Equitable Estoppel Applies Here to Toll the 45-Day Statute of Limitations**.

According to Defendant, "[n]o evidence exists that the Agency misinformed Plaintiff about the limitations period or otherwise prevented her from asserting her rights."  Def's Memorandum, at 12.  Nothing could be further from the truth.  Defendant, of course, has no responsibility to agree that Ms. Cymbor's confusing statements reasonably misled Plaintiff into thinking she could resume her EEO complaint in the event mediation were to fail.  Plaintiff's handwritten notes, however, certainly constitute

"evidence" that that is exactly what happened here. Based on Ms. Cymbor's statements, Plaintiff was led to believe she could participate in the Agency's ADR process, and that if that process were unsuccessful, she could file her EEO complaint later. In fact, Ms. Cymbor made not one but three misleading statements, upon which Plaintiff reasonably relied in pursuing mediation and not, initially, the Agency's EEO process.

The administrative time limits created by the EEOC are subject to equitable tolling, estoppel, and waiver. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997), citing *Irvin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). In Title VII cases, "equitable tolling" of statutes of limitations can occur in several circumstances. Courts "have excused parties, particularly those acting *pro se*, who make diligent but technically defective efforts to act within a limitations period. . . . Like other courts, we have excused parties who were misled about the running of a limitations period . . . by a government official's advice upon which they reasonably relied . . . ." *Id*. at 438, citing *Jarrell v. United States Postal Service*, 753 F.2d 1088, 1092 (D.C. Cir. 1985). Such was the case here.

To begin with, Plaintiff was acting *pro se* during the time period in question, October, 2005. Next, Plaintiff was misled by Ms. Cymbor about the 45-day time limit for filing. According to her contemporaneous, handwritten notes of her meeting with Ms. Cymbor, which Plaintiff prepared during that meeting, Ms. Cymbor did in fact refer to the 45-day limit for filing an EEO complaint. Later in the thirty-minute meeting, however, after presenting two options to Plaintiff – the Agency's ADR process ("FAIR"), or filing an informal EEO complaint – Ms. Cymbor explained: "If I go fair I still have the option to change & go EEO. Sometimes through dialog I can feel that due to progress

in fair or statements that I think now that I look at it this is discrimination due to

_____ it can be recognized later." Ex. 2, White Affidavit, at 2.  This portion of

Plaintiff's handwritten notes reflects Ms. Cymbor's statement that if she chose FAIR, she

still would have had the option to change and file an EEO complaint.  *Id.*  Furthermore,

and to compound the confusion, Ms. Cymbor repeated her advice that in the event ADR

were not successful, Plaintiff could always file an EEO complaint later.  Exhibit 2, page 2

("Last option always open if the mediation does not . . . .").[4]

    According to Defendant, compliance with the administrative time lines

established by the EEOC is "mandatory."  Def's Memorandum, at 8, citing *Bowden*,

106 F.3d at 437.  Plaintiff does not disagree with this assertion but notes that it merely

begs the question.  *Bowden* itself recognizes that the doctrine of equitable estoppel

applies where, as here, a plaintiff is misled by the Federal Government.  *Id.* at 438.

Moreover, according to Defendant, Plaintiff's claims with respect to the Pregnancy

Discrimination Act should be dismissed, in part, "to protect employers from the burden

of defending claims arising from employment decisions that are long past."  Def's

Memorandum, at 9, quoting *Delaware State College v. Ricks*, 449 U.S. 261 (1980).  This

argument is inapposite.

    When Plaintiff returned from maternity leave on October 2, 2005, she learned that

the Agency had removed her job responsibilities, and transferred them to another

employee who Plaintiff had trained to be her temporary replacement, leaving her without

any job responsibilities at all, save for menial tasks.  Plaintiff's replacement, in fact, was

told not to share any of Plaintiff's former duties with her.  Plaintiff asserts that she filed

---

[4] Ms. Sophia Thornton Eaves, former Agency EEO specialist, was present for Plaintiff's meeting with Ms. Cymbor, but for just a short time.  Exhibit 3, White Affidavit, ¶ 4.

her informal EEO complaint on October 11, 2005, during her meeting with Ms. Cymbor.

The Agency asserts that Plaintiff's informal EEO complaint was not filed until December

16, 2005, following the unsuccessful conclusion of ADR, four weeks after the November

17, 2005 deadline. Def's Memorandum, at 11. The discrimination alleged by Plaintiff

was not "long past," and was, in fact, part of a pattern of discrimination continuing

through her non-selection, on December 2, 2005, for her former position, and to her

retaliatory assignment to the position of HR Assistant on March 6, 2006. *See* discussion,

*infra* pp. 11-15.

It is inappropriate for an agency, either through ignorance or bad faith, to induce

an appellant to delay the filing of a formal complaint due to a possible pending

resolution, such as a scheduled mediation. *Bullock v. Department of Navy*, EEOC No.

01830565 (1983). An agency cannot dismiss a formal complaint on the basis of

timeliness in the "face of its own improper actions." That is precisely what has happened

here. Moreover, when an agency gives a potential Plaintiff errant advice -- intentional or

not – about starting the EEO process, this constitutes sufficient grounds for waiving the

time period for counselor contact. *See, e.g.*, *Porter v. Secretary of Treasury*, EEOC No.

01976234 (1999), and *Whitley v. Postmaster General*, EEOC No. 01913883 (1991) (the

EEO counselor advised Plaintiff would have the right to bring the claim at a later date).

The agency in *Porter* could not escape potential liability by relying on the Plaintiff's

delay in pursuing her complaint, which -- as here -- was due to reliance on what she was

told by the EEO counselor:

> We find that appellant intended to pursue the non-selection issue in
> January 1995. However, she did not do so until September 1995,
> approximately six months later, because she relied on the EEO
> Counselor's representation in January 1995, that she could pursue the

allegation in the future. The Commission has held that agency actions that
mislead an individual concerning his or her EEO rights will toll the
limitations period.

*See Herrera v. U.S. Postal Service*, EEOC No. 05891351 (Sept. 28, 1989) (the

Commission found that it would allow the "tolling of time requirements when an

agency lulls a Plaintiff into taking no action or actively misleads or prevents a

Plaintiff from asserting his rights").

An agency also can be estopped from asserting a timeliness defense where its

instructions to a Plaintiff were simply so confusing that a reasonable person could have

become confused. *See, e.g. Cueto v. Attorney General*, EEOC No. 01963999 (1997).

Where, as here, "there is an issue of timeliness, an agency always bears the burden of

obtaining sufficient information to support a reasoned determination as to timeliness."

*Porter*, citing *Guy v. Department of Energy*, No. 05930703 (1994).[5]

Defendant asserts that "[c]ontrary to Plaintiff's assertions, the evidence does not

establish that the Agency informed Plaintiff that if she participated in mediation and the

process was unsuccessful, she could initiate EEO counseling at any time following the 45

calendar-day time limitations period." Def's Memorandum, at 12. But this formulation

misstates Plaintiff's argument because that is not what Plaintiff understood Ms. Cymbor

to say. Plaintiff, instead, left her October 11, 2005 counseling session with Ms. Cymbor

with the clear understanding that she already was in the EEO process, having

communicated her intent to file an EEO complaint, and that she merely needed to resume

that effort in the event mediation were to fail. Here is what she thought, at the time:

---

[5] In addition, it is "incumbent upon the EEO Counsel to inquire into the reasons for the delay when a
complainant initiates counseling beyond the applicable time limit. The record in this case does not indicate
that the EEO Counselor conducted an inquiry with respect to the timeliness of appellant's counselor
contact." *Blacklock v. U.S. Postal Service*, EEOC No. 01982223, 1999 EEOPUB LEXIS 2195 (April 28,
1999). The Agency, likewise, conducted no such inquiry here.

> My job posted today.  How funny and although I already know I
> don't stand a snowballs chance in hell, I have no choice but to apply.
> Denise said I would need to apply for the case so since I've already
> contacted the EEO I am in for a penny in for a pound.  This is so
> frustrating having to go through this.

Exhibit 4, Shauna I. White, Handwritten Notes (Oct. 27, 2005).[6]  In this diary entry,

Plaintiff referred to her intent to apply for the position of Program Analyst, in effect her

old position.  The reference "for the case" refers to Plaintiff's EEO case.  When Plaintiff

wrote that "I've already contacted the EEO," and that she was "in for a penny in for

pound," she was memorializing her understanding that she already had reserved her right

to pursue an EEO complaint in the event mediation was not successful.  Exhibit 6,

Declaration of Shauna I. White (July 22, 2008).  This diary entry, moreover,

demonstrates Plaintiff possessed the requisite intent to file a discrimination complaint

when she visited the Agency's EEO office on October 11, 2005.  To initiate the EEO

process, an employee must make contact in a timely manner and "demonstrate an intent

to begin the EEO process."  *Hewitt v. Rice*, No. 07-1097, 2008 U.S. Dist. LEXIS  46487,

at *11 (D.D.C. June 17, 2008).

## II.    __Management's Actions Constitute a Hostile Work Environment__.

Even assuming, *arguendo*, that Plaintiff was not misled into missing, by four

weeks, her deadline for filing an informal EEO complaint, the Agency's action in

dismissing the Pregnancy Discrimination Act portion of her Formal Complaint cannot

stand.  "Hostile environment claims are very different in kind from discrete acts.  Their

very nature involves repeated conduct."  *National Railroad Passenger Corporation v.*

*Morgan*, 536 U.S. 101, 117 (2002).  The "timely filing provision [29 C.F.R.

---

[6] This Exhibit was produced to the Agency during the EEOC discovery process on March 19, 2007.
Exhibit 5, Letter from Larry J. Stein, Esq., Plaintiff's Counsel, to Neil M. Robinson, Esq., Agency Counsel.

§ 1614.105(a)(1)] only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Id*. It is not necessary for an employee to prove the elements of a hostile work environment charge at the formal complaint stage. The Agency's EEO office, upon review of Plaintiff's Formal Complaint, had the discretion to, and should have, treated her claim as a continuing violation.

The scope of the prohibition included within the purview of Title VII "is not limited to 'economic' or 'tangible' discrimination," *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993), and . . . it covers more than 'terms' and 'conditions' in the narrow contractual sense." *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998). In determining whether an actionable hostile work environment exists, "we look at 'all the circumstances,' including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." *Morgan*, 536 U.S. at 116, quoting *Harris*, 510 U.S. at 23.

The series of allegations which Plaintiff described in her Formal Complaint, most particularly the Agency's sudden and surprise action stripping her of her job duties upon her return from maternity leave -- and leaving her no office in which to work -- in conjunction with her non-selection and the Agency's retaliation, constitute severe and humiliating treatment rising to the level of a hostile work environment.[7] Plaintiff alleged

---

[7] The Formal Complaint effectively alleges a "constructive demotion" whereby Plaintiff, following her return from maternity leave, was replaced in her position by the person she trained. Plaintiff is African-American with an undergraduate degree; her replacement is white, with a high school education. It is interesting, and quite offensive, to note the manner in which the Agency now attempts to downplay

in her Formal Complaint that the Agency's actions constituted just such a "pattern of conduct" warranting the Agency's treatment of her Complaint as one alleging hostile environment based on race, sex, and reprisal, and requiring acceptance of that Complaint in its entirety, notwithstanding that the Pregnancy Discrimination Act portion of the Complaint may have occurred a few weeks outside of the 45-day limit.[8] *Flowers v. General Services Administration*, EEOC No. 0120080817, 2008 EEOPUB LEXIS 1205 (April 11, 2008), citing *Morgan*, 536 U.S. at 117 ("Because the incidents that make up a hostile work environment claim collectively constitute one unlawful employment practice, the entire claim is actionable, as long as at least one incident that is part of the claim occurred with the filing period.").

Defendant, ironically, also cites *Morgan* for the proposition that "each incident of discrimination 'constitutes a separate actionable unlawful employment practice.'" Def's Memorandum, at 10. This principle does not apply, however, to a pattern and practice scenario where, as here, the very same OCC management officials denied Plaintiff's attempts to resume her job after returning from maternity leave, refused to allow her to resume her old job when it was reposted as a "new" position, and then retaliated against

---

and trivialize the treatment to which Plaintiff was subjected. As the Agency recognized at the time of its dismissal of Plaintiff's claim, she asserts that, upon returning to work from maternity leave, she was prevented from resuming her position, and assigned menial tasks instead. Def's Memorandum, Exhibit 10, at 16-19. In fact, what happened was worse than that. When she sought out her temporary replacement, Teresa Hockaday, whom she had trained to fill-in for her while she was away, Ms. Hockaday told her that "they told me not to give you any of the work that I'm doing." This treatment was humiliating. The Declaration of Sophia Thornton Eaves (Feb. 20, 2007), Def's Memorandum, Exhibit 2, states that Plaintiff visited the EEO office "to discuss issues associated with her desk change." There was no "desk change." The Plaintiff, upon her return, had no job, no duties, and no desk at all. *Id.* Exhibit 10, at 16-19.

[8] The relevant portion of Plaintiff's Formal Complaint alleging hostile work environment reads as follows: "These comments show that the agency has engaged in a pattern of conduct to affect the terms and conditions of my employment. This pattern of discrimination was initially based on sex (pregnancy), and, later, in my non-selection for the position of Program Analyst, Series 343, NB IV-V, on race and on reprisal for EEO activity as well." Def's Memorandum, Exhibit 6, Formal Complaint, Narrative Statement, Shauna I. White, Part III: Alleged Discriminatory Actions, at 3.

her for filing an EEO complaint.  These three allegations are part and parcel of the same

discriminatory animus on the part of the OCC, and represent a continuing pattern of

discrimination.

In *Foster v. Dep't of the Navy*, EEOC Appeal No. 01962504, 1998 EEOPUB

LEXIS 2641 (May 1, 1998), the appellant, in a case bearing striking similarities to the

Plaintiff's, alleged that she was discriminated against based on race, sex, and reprisal

when she was not selected for a position within her agency; when she was not allowed to

perform duties described in her position description; subjected to discriminatory

statements by management; and, subjected to reprisal when her job was changed from

one series to another.

As was the case here, the Navy also notified appellant that it was dismissing other

incidents, presumably on timing grounds.  In its Decision, the EEOC's Office of Federal

Operations remanded the case to the Agency for investigation of the improperly-

dismissed charges:

> Initially, we find that the agency did not properly frame the issues in
> appellant's complaint and, accordingly, failed to develop a complete
> and impartial factual record.  Here, the agency has acted improperly by
> treating appellant's allegations in a piecemeal manner.  *See Meaney v.
> Department of the Treasury*, EEOC Request No. 05940169 (Nov. 3,
> 1994) (agency should not ignore the "pattern aspect" of a Plaintiff's
> allegations and define the issues in a piecemeal manner where an
> analogous theme unites the matter complained of).  Instead of
> examining appellant's complaint as a whole and determining what
> appellant was alleging, the agency addressed various allegations in the
> complaint on a piecemeal basis.  By employing this approach, the
> agency was able to dismiss certain allegations and *avoid addressing
> the issue that is at the core of appellant's complaint*.  This issue is that
> various agency officials . . . engaged in a pattern of conduct to affect
> the terms and conditions of appellant's employment, from the start of
> that employment until appellant's departure.  This pattern of
> discrimination was initially based on appellant's race and/or sex, and
> later on reprisal for EEO activity as well. This issue appears to be the

overriding concern in appellant's complaint.  The various allegations mentioned by the agency are merely parts of this general issue.  For instance, this alleged pattern of discrimination resulted in limitations being placed on appellant's career progress and her eventual nonselection for the position.

(Emphasis added.)  By dismissing Plaintiff's allegation that the Agency violated the Act, it has likewise defined the issues in a piecemeal manner, and "avoided addressing the issue that is at the core of [Plaintiff's] complaint."

The very same management officials responsible for the humiliating treatment to which Plaintiff was subjected upon her return from maternity leave in October, 2005, two months later chose a dramatically less qualified individual to replace her in her former position of Program Analyst.  In fact, Plaintiff was asked to train that person to be her temporary replacement while out on maternity leave, and did so.  As in *Foster*, these management officials shortly thereafter reassigned Plaintiff to a less prestigious position within the Agency.

<u>**CONCLUSION**</u>

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order denying Defendant's Motion for Partial Dismissal.

Dated:  July 22, 2008

                                  Respectfully submitted,


                                  /s/_____
                                  Larry J. Stein, D.C. Bar No. 397397
                                  2009 North Fourteenth Street
                                  Suite 708
                                  Arlington, Virginia 22201
                                  703 812-7880
                                  703 424-7670 (facsimile)

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE

| | | |
|---|---|---|
| SHAUNA WHITE | ) | EEOC NUMBER |
|     Complainant, | ) | 570-2007-00058X |
| | ) | |
|     v. | ) | Agency Number |
| | ) | TD 06-2231 |
| | ) | |
| HENRY M. PAULSON | ) | |
| SECRETARY, | ) | |
| U.S. DEPARTMENT OF THE | ) | DATE: FEBRUARY 5, 2007 |
|     TREASURY, | ) | |
|     Agency. | ) | |
| | ) | |

## AFFIDAVIT OF SHAUNA I. WHITE

I, SHAUNA I. WHITE, being duly sworn, declare that I am competent to testify to the following matters of my own personal knowledge:

1. I am employed as a Human Resources Assistant in HR Solutions, Workforce Effectiveness, Office of the Comptroller of the Currency ("OCC"), located at 250 E Street, S.W., Washington, D.C. 20219.

2. I am the Complainant in the instant case, *White v. Paulson*, EEOC Number 570-2007-00058X.

3. I first sought EEO counseling in this matter when I met with Ms. Laurie Cymbor on October 11, 2005. My account of that meeting is reflected on pages 12 and 13 of my Affidavit, dated June 16, 2006, which is located at pages 35-36 of the Agency File.

4. During my meeting with Ms. Cymbor, I prepared contemporaneous notes of what she told me. Those notes consist of a two-page, undated, handwritten account, in my handwriting. This two-page document contains the date "Feb-22-2006 10:48" in the upper left-hand corner, which indicates when I faxed this document to my representative.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of February, 2007.

Shauna I. White

Subscribed and sworn to before me,
this 6 day of February 2007

NOTARY PUBLIC

My Commission expires:

Allyson H. Ward
Notary Public, District of Columbia
My Commission Expires 11-30-2010

EEO — longer more adversarial
45 days must be sure

Mediation with fair — two parties
willing to sit most are resolved
since they are willing to come to
mediation

If I go fair I still have the goods
to charge & go EEO sometimes
through doing I can feel tense
due to prayer in fair or statements
that I think now that I was
felt it this be discrimination due to
_____ its can be recognized
later

- who would come to mediation
- if I get someone to come in they will
  come [illegible]

you can _____ with
to _____ discussion

- if party is willing to come changes
  are they too want quick resolution
- It is better to try to do this it looks
  better for me

LED
- discrimination can't hard to prove
- must be sure do I really believe they
  took me out of my job because
  I was away on maternity leave
- LAST option Always open if the mediation does not
  How DO I File?

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE

| | | |
|---|---|---|
| SHAUNA WHITE | ) | EEOC NUMBER |
|       Complainant, | ) | 570-2007-00058X |
| | ) | |
| v. | ) | Agency Number |
| | ) | TD 06-2231 |
| | ) | |
| HENRY M. PAULSON | ) | |
| SECRETARY, | ) | |
| U.S. DEPARTMENT OF THE | ) | DATE: FEBRUARY 28, 2007 |
|     TREASURY, | ) | |
|       Agency. | ) | |
| | ) | |

## AFFIDAVIT OF SHAUNA I. WHITE

I, SHAUNA I. WHITE, being duly sworn, declare that I am competent to testify to the following matters of my own personal knowledge:

1.　　I am employed as a Human Resources Assistant in HR Solutions, Workforce Effectiveness, Office of the Comptroller of the Currency ("OCC"), located at 250 E Street, S.W., Washington, D.C. 20219.

2.　　I am the Complainant in the instant case, *White v. Paulson*, EEOC Number 570-2007-00058X.

3.　　On October 11, 2005, I met with Ms. Laurie Cymbor, in her capacity as an EEO counselor, to discuss my options. After a time, Ms. Cymbor asked Ms. Sophia Thornton Eaves to join our meeting.

4.　　Ms. Thornton was present for just a short time; it was at least thirty minutes before Ms. Thornton joined our meeting. The meeting did not continue for long once Ms. Thornton arrived.

5.　　As I mentioned in my Affidavit dated February 5, 2007 (Complainant's Appeal of Agency's Partial Dismissal of Her Discrimination Claim, filed February 6, 2007, Exhibit 2), I prepared contemporaneous, handwritten notes of what Ms. Cymbor

told me. In other words, I made these notes during our meeting. The contemporaneous notes were attached as Exhibit 1, Complainant's Appeal of Agency's Partial Dismissal of Her Discrimination Claim, filed February 6, 2007. Ms. Eaves was not present during that portion of our meeting.

6.      According to the Declaration of Laurie Cymbor, dated February 21, 2007, I told her that I "believed the FAIR program was the better approach because she did not believe the actions taken by management were discriminatory." This is untrue. Ms. Cymbor, for some reason, then said that "if you go EEO, you have to be sure." In response, I said that I was not sure *that I had a case I could win*. I never told Ms. Cymbor, or anyone else, that I did not believe I had been discriminated against. I told Ms. Cymbor that I did not know whether I could *prove* that the Agency's actions -- in preventing me from returning to my job -- were discriminatory.

7.      In response, Ms. Cymbor said what I have recorded on page two of my handwritten notes of October 11, 2005: "discrimination can be hard to prove." "must be sure[.]" "do I really believe they took me out of my job because I was away on maternity leave." "Last option always open if the mediation does not" work.

8.      It was clear to me at the time that Ms. Cymbor was referring to my ability to file an EEO complaint when she told me that the last option is always open if the mediation does not work.

9.      Page one of my handwritten notes, paragraph 3, reads as follows: "If I go fair I still have the option to change & go EEO. Sometimes through dialog I can feel that due to progress in fair or statements that I think now that I look at it this is discrimination due to _____ it can be recognized later."

10.     This last portion of my notes reflects Ms. Cymbor's statement that if I choose FAIR, I still have the option to change and go EEO.

11.     My initials on the document entitled "Agreement to Utilize FAIR Mediation," dated October 19, 2005, do not alter the fact that I believed, based on Ms. Cymbor's

- 2 -

statements to me, that I could have, as a result of information acquired during the FAIR process, filed my EEO claim later.

12.        I did not "acknowledge," to Ms. Cymbor or anyone else, that I was somewhat familiar with the EEO process.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of February, 2007.


Shauna I. White


Subscribed and sworn to before me,
this __ day of _____,


NOTARY PUBLIC

My Commission expires:

October 27

My Job started today now Fanny and although I already know I don't stand a snowballs chance in hell I hope he choose and to worry. Donald and I would wait to resolve the case so once she choses corrected the res I he is for a penny in for a pound. This is so frustrating. Img so thankful this [redacted]

[redacted] give me the chance to help to work and happy share pictures and my safe J&K. Either that or fighting and dad a single parent.

# LARRY J. STEIN

Attorney at Law

Voice: (703) 812-7880
Fax: (703) 522-1250
E Mail: larrystein@ljslaw.net

2009 North Fourteenth Street
Suite 708
Arlington, Virginia   22201

March 19, 2007

<u>VIA FACSIMILE</u> - <u>CONFIDENTIAL</u>

Neil M. Robinson, Esq.
Agency Representative
Office of the Comptroller of the Currency
250 E Street, S.W., Eighth Floor
Washington, DC 20219

Re: *White v. Department of the Treasury*, EEOC No. 570-2007-00058X

Dear Neil:

As promised, these are the remaining, relevant pages of Ms. Shauna White's diary, covering the period responsive to the Agency's Request for Production of Documents Number 6, which reads as follows: "Produce any diary, pocket calendar, desk calendar, journal, or other means of periodically recording information, or notes recorded or kept by you, for the period of October 3, 2005 through March 6, 2006, that pertain to the allegations contained in your March 7, 2006 complaint."

I know that portions of this diary are unreadable. I am willing to have Ms. White prepare a typed, unofficial transcript of these pages. A more practical solution, however, may be to wait for Ms. White's deposition, at which point she would read any portions you choose into the record. Please let me know how you would like to proceed.

Sincerely,

Larry J. Stein
Attachment

cc: Ms. Shauna I. White

Member: *Virginia Bar, District of Columbia Bar,* and *Pennsylvania Bar ~ Practice Before Federal Courts/Agencies*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAUNA I. WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 08-0382 (RJL) |
| | ) ECF |
| HENRY M. PAULSON, JR., | ) |
| Secretary of the Treasury, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF SHAUNA I. WHITE

I, SHAUNA I. WHITE, being duly sworn, declare that I am competent to testify to the following matters of my own personal knowledge:

1.    I formerly was employed as a Human Resources Assistant in HR Solutions, Workforce Effectiveness, Office of the Comptroller of the Currency ("OCC"), located at 250 E Street, S.W., Washington, D.C. 20219.

2.    I am the Plaintiff in the instant case, *White v. Paulson*, Civil No. 08-0382 (RJL).

3.    On October 27, 2005, I made a handwritten entry in my personal diary relating to work issues.. That diary entry reads as follows: "My job posted today. How funny and although I already know I don't stand a snowballs chance in hell, I have no choice but to apply. Denise said I would need to apply for the case so since I've already contacted the EEO I am in for a penny in for a pound. This is so frustrating having to go through this."

4.    In this diary entry, I referred to my intent to apply for the position of Program Analyst, in effect my old position. The reference "for the case" refers to this EEO case. When I wrote that "I've already contacted the EEO," and that I was "in for a penny in for

pound," I was recording my understanding that I already had reserved my right to pursue an EEO complaint in the event the mediation was not successful.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C. this 22nd day of July, 2008.