**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHAUNA I. WHITE            )
           Plaintiff,        )
                     )
          v.               )        Civil Action No. 08-0382 (RJL)
                     )        ECF
HENRY M. PAULSON, JR.,         )
Secretary of the Treasury,        )
                     )
           Defendant.        )
_____)

**REPLY TO PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

Defendant Henry M. Paulson, Secretary of the Treasury ("Defendant"), hereby respectfully files this reply to Plaintiff's Opposition to Defendant's Motion for Partial Dismissal ("Opposition"). Plaintiff's claim of alleged sex (female) discrimination on the basis of pregnancy is untimely and should be dismissed. Further, Plaintiff's attempts to avoid the clear application of National Railroad Passenger Corp. v. Morgan, 122 S. Ct. 2061 (2002), are unavailing.

**ARGUMENT**

I.  Equitable Estoppel Does Not Apply

Plaintiff argues that Defendant misled her with regard to the 45 calendar-day time frame for initiating EEO counseling and, therefore, Defendant is estopped from asserting her untimeliness as a defense. See Opposition at 5-6. This argument is based on her claim that Ms. Laurie Cymbor, a representative of the Department of the Treasury's ("Agency") Workplace

Fairness and Equal Opportunity Division (formerly Workplace Fairness and Alternative Resolutions or WFAR ) misled her during their October 11, 2005 meeting.  Id.  Plaintiff's claim lacks merit.

The law is clear that an employee's compliance with all administrative procedures and timelines is mandatory.  See Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); Battle v. Rubin, 121 F. Supp. 2d 4, 7 (D.D.C. 2000) ("a party must timely file all applicable administrative complaints and appeals in order to bring a claim in federal court"); Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000) ("timely administrative charge is a prerequisite to initiation of a Title VII action").  As the U.S. Supreme Court reiterated in Morgan, "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'"  122 S. Ct. at 2070 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).

 Plaintiff has not asserted any of the "extraordinary" grounds that could justify equitable tolling; her mere negligence is insufficient to avoid the consequences of her failure to adhere to the 45-day rule.  Compare Williams v. Munoz, 106 F. Supp. 2d 40, 43 (D.D.C. 2000); see also Washington v. WMATA, 160 F.3d 750, 753 (D.C. Cir. 1998) (the "court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances").

Plaintiff asserts that she was "misled" by the statements of Ms. Cymbor or that her statements were "so confusing" that Plaintiff did not understand that she must request EEO counseling within 45 calendar-days of the date she became aware of an alleged discriminatory event.  See Opposition at 5, 9.  In the October 11, 2005 meeting with Plaintiff, Ms. Cymbor and Sophia Thornton, the Office of Comptroller of the Currency Complaints Team Leader, both

stated several times that if Plaintiff believed that she was being discriminated against, she had 45 days from the date of the alleged event to contact OCC WFAR staff to initiate EEO counseling. Exhibit 1, Declaration of Sophia Thornton Eaves, ("Ex. 1") at ¶ 3. Neither Ms. Cymbor nor Ms. Thorton made any subsequent remarks that would act to withdraw their statements regarding the *timing* of the relief Plaintiff could seek. See Exhibit 2, Declaration of Laurie Cymbor, ("Ex. 2"); Ex. 1.

Plaintiff further argues that the Agency's "Agreement to Utilize FAIR Mediation" that was read and signed by Plaintiff is "anything but clear." See Opposition at 4. Plaintiff cites to one of the *many* sections in the agreement that speak to the EEO process, yet fails to note the other, extremely clear, sections in the agreement, including:

> I understand that if I believe I have been discriminated or retaliated against on the basis of race, color, religion, sex, national origin, age, disability, sexual orientation, parental status or genetic information, I must request EEO counseling within **45 calendar days** of the date the matter alleged to be discriminatory or the date I became aware of the matter. (Emphasis in original)

See Exhibit 4, Notification of Mediation, ("Ex. 3") at 3.

Moreover, Plaintiff acknowledged she was somewhat familiar with the EEO process because she served on a detail to that office at the OCC. Ex. 2 at ¶ 3.

Plaintiff also attempts to argue that the actions of the Agency induced delay or lulled her into taking no action. See Opposition at 8-9. Not only are there no facts indicating that Plaintiff attempted to file her informal EEO Complaint at any time before December 16, 2005, but also in the October 11, 2005 meeting, Plaintiff stated that she did not believe the OCC was discriminating against her nor did she believe the actions in question were discriminatory. Ex. 1 at ¶ 3; Ex. 2 at ¶ 5.

II.   Plaintiff's claims are not valid "pattern-or-practice" claims

As noted in the Opposition, the Court in Morgan upheld the continuing violation theory for hostile-environment claims.  122 S.Ct. at 2073-76.  As the Court reasoned, "[h]ostile environment claims are different in kind from discrete acts. . . .  Such claims are based on the cumulative [e]ffect of individual acts."  Id. at 2073.  The Court also indicated in a footnote that it had "no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims."  Id. at 2073 n.9.  Plaintiff attempts to avoid Morgan's holding regarding "discrete act" claims by characterizing her claims as both "part of a pattern of discrimination" as a hostile-environment claim.  See Opposition at 8, 11-15.

Regardless, however, of whether the Supreme Court would treat a pattern-or-practice claim in the same manner as a "discrete act" claim, Plaintiff, as an individual litigant, cannot assert a pattern-or-practice claim.  As stated by this Court's decision in Thompson v. Whitman, 01-CV-2105, Memorandum Opinion of August 28, 2002, slip op. at 5 (attached hereto as Exhibit 4):  "The Supreme Court has only recognized 'pattern and practice' discrimination claims in two contexts:  when the government brings suit on behalf of others or in a private class action.  See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 360 (1977); Franks v. Bowman Transp. Co., 424 U.S. 747, 772 (1976).  Nearly every court considering the issue has found that a pattern and practice claim is not available to a private, non-class action plaintiff."  On that basis, the Thompson Court specifically rejected the plaintiff's attempt to circumvent Morgan by characterizing his claim as a pattern-or-practice claim, holding that "Thompson's pattern and practice claim cannot stand."  Id. at 8-9.

Further, in Wagner v. Taylor, the Court stated that "class-wide allegations of discrimination are commonly referred to as 'pattern or practice' cases."  Wagner 836 F.2d 578,

4

592 n. 94 (D.C. Cir. 1987); <u>see also</u> <u>Anyaibe v. Gilbert Security Service, Inc.</u>, 1995 WL 322452, at *5 (D.D.C. 1995) (pattern or practice claim must involve more than one employee and be raised in EEOC charge).

In the instant case, Plaintiff is a single litigant asserting claims on behalf of herself only and seeking a remedy for herself only. <u>See</u> Plaintiff's Complaint (Dkt. No. 1). Thus, Plaintiff's complaint clearly cannot be characterized as a "pattern-or-practice" complaint; even if it could be, Plaintiff is not authorized to bring such a complaint. As in <u>Thompson</u>, Plaintiff cannot avoid <u>Morgan</u> by belatedly attempting to attach the "pattern-or-practice" label to her complaint.

<u>III. Management's Actions Do Not Constitute a Hostile Work Environment</u>

Plaintiff also seeks to avoid <u>Morgan</u> by arguing that "the Agency's EEO office, upon review of Plaintiff's Formal Complaint, had the discretion to, and should have, treated her claim as a continuing violation." <u>See</u> Opposition at 11. Not only was Plaintiff's "hostile work environment" claim not accepted for investigation at the administrative level, it is not raised as a claim in the Complaint. <u>See generally</u> Complaint. Further, this argument fails in the face of the Supreme Court's clear guidance that "each incident of discrimination and each retaliatory adverse employment action constitutes a separate actionable 'unlawful employment practice.'" 122 S.Ct. at 2073.

A hostile environment is a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive environment." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S.17, 21 (1993) (internal citation omitted). In evaluating an alleged hostile environment, Courts apply an "objective" standard to determine whether, considering all the circumstances, a reasonable

person in the plaintiff's position would find the challenged conduct "*severely* hostile or abusive." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81-82 (1998) (emphasis added); see also Morgan, 122 S.Ct. at 2073 ("In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'") (quoting Harris, 510 U.S. at 23).

Plaintiff does not allege discriminatory intimidation, insult, and ridicule so "severe or pervasive" as to alter the conditions of her employment.  To the contrary, Plaintiff only alleges that she was discriminated against based on the assignment of new tasks upon returning from maternity leave, and by being reassigned to a position after her non-selection for a different position.  See Opposition at 12.  Thus, her claims clearly are not akin to hostile environment claims for which the nature of the wrong is "the cumulative [e]ffect of individual acts," Morgan, 122 S.Ct. at 2073, but rather are based on the type of discrete, related acts described in Morgan.

Plaintiff did not exhaust her administrative remedies regarding her claim sex (female) discrimination claim on the basis of pregnancy.   Further, Plaintiff has asserted no valid grounds to preclude Defendant from raising timeliness as a defense herein.  Morgan requires that her complaint be dismissed for failure to timely exhaust administrative remedies.

## CONCLUSION

For the reasons stated above, Defendant respectfully asks this Court to dismiss Plaintiff's sex (female) discrimination claim on the basis of pregnancy.

Dated: August 1, 2008

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_/s/_____
MEGAN M. WEIS
Special Assistant U.S. Attorney
United States Attorney's Office
Civil Division
555 4th Street, NW
Washington, D.C. 20530

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE – 570
1801 L Street, NW
Suite 100
Washington, DC  20507

| | |
|---|---|
| Shauna I. White, | EEOC No. 570-2007-00058X |
| Complainant, | |
| v. | Agency No. 06-2231 |
| Henry M. Paulson, Jr., Secretary, U.S. Department of the Treasury, | AJ: Hon. Kathryn Brown |
| Agency. | |

DECLARATION OF SOPHIA THORNTON EAVES
Formerly of the Office of the Comptroller of the Currency
Workplace Fairness and Alternative Resolutions Division
Team Leader for the Complaints Team

1.    I, Sophia Thornton Eaves, am a former employee of the Office of the Comptroller

of the Currency, Workplace Fairness and Alternative Resolutions ("WFAR") Division. I

worked in the WFAR Division from July 2005 to July 2006 as the Team Leader for the

Complaints Team.

2.    On or about October 11, 2005, Ms. Shauna White visited the WFAR Division to

discuss issues associated with her desk change.  During Ms. White's visit to the WFAR

Division on or about October 11, 2005, Ms. Cymbor asked me to join their meeting to

ensure she provided Ms. White appropriate information concerning the Fair Alternatives

and Innovative Resolutions (FAIR) Program and the EEO Process.  Ms. Cymbor

explained the FAIR process, which allows the parties to mediate their workplace issues.

Ms. Cymbor also explained to Ms. White that if she felt that she was being discriminated

against, she could seek EEO Counseling, the required first-step to filing an EEO Complaint.

3.    At the meeting with Ms. White and Ms. Cymbor, I reiterated to Ms. White that she must seek EEO counseling within 45 days of the alleged discriminatory event and that she could still use the FAIR program as long as she initiated EEO counseling, with the WFAR Division, within the 45-day time frame. During the meeting, Ms. White commented that she didn't believe that she was being discriminated against. I reiterated again that if she believed after the meeting that she was discriminated against, she had 45 days from the date of the alleged event to contact WFAR to initiate EEO counseling.

4.    To my knowledge, Ms. White used the FAIR process to attempt resolution of her workplace issue, and she signed the Agreement to Mediate Form which advised her, again, that she could initiate EEO Counseling within 45-days if she believed she was a victim of discrimination.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE – 570
1801 L Street, NW
Suite 100
Washington, DC  20507

| | | |
|---|---|---|
| Shauna I. White, | ) | |
| | ) | EEOC No. 570-2007-00058X |
| Complainant, | ) | |
| | ) | |
| v. | ) | Agency No. 06-2231 |
| | ) | |
| Henry M. Paulson, Jr., Secretary, | ) | |
| U.S. Department of the Treasury, | ) | AJ: Hon. Kathryn Brown |
| | ) | |
| Agency. | ) | |
| | ) | |

DECLARATION OF LAURIE CYMBOR
Office of the Comptroller of the Currency
Workplace Fairness and Equal Opportunity Division
Formerly the Workplace Fairness and Alternative Resolutions Division
Equal Employment Opportunity Specialist


1.      I, Laurie Cymbor, make the following declaration.  My name is Laurie Cymbor,
Equal Employment Opportunity (EEO) Specialist, NB 260, Band VI, Workplace Fairness
and Equal Opportunity Division, Office of the Comptroller of the Currency.  I have
served as an EEO Specialist, beginning January 10, 1994 until on or about April 1998;
and then again from November 2003 until the present time.

2.      On or about October 3, 2005, the first day of her return to work from maternity
leave, Ms. White came to my office to discuss her job concerns and the fact that her
personal possessions had been packed away while she was on maternity leave.  Ms.
White appeared emotionally distressed and relayed to me information regarding her
personal life.  Most of the conversation concerned Ms. White's personal situation.  Due
to her emotional state at that time, I suggested that she contact the Employee Assistance
Program (EAP).

3.      On or about October 11, 2005, Ms. White visited me in my office to again discuss
her workplace and personal concerns.  I asked our Complaints Program Team Leader,
Sophia Thornton, to join us.  During Ms. Thornton's and my discussion with Ms. White,
we explained our FAIR and EEO programs.  Specifically, we explained that the FAIR
program deals with nondiscriminatory concerns, such as communications issues, different

perceptions, personality differences, misinterpretations and misunderstandings. Ms. Thornton and I explained to Ms. White that there were no time frames for the FAIR program. We also informed her about the EEO process and the 45 calendar-day time frame for entering into the EEO pre-complaint process. This is a standard practice with our office. Ms. White acknowledged that she was somewhat familiar with the EEO process because she served on a detail in our office.

4.      At one point during our meeting on or about October 11, 2005, Ms. White inquired about whether she could change her mind if she opted to use FAIR, and, instead, pursue the EEO process. Ms. Thornton and I advised her that her complaint would be considered timely if she requested EEO counseling within 45 calendar days of the date she became aware of the alleged discriminatory event. We also reminded her that Saturdays and Sundays counted since the 45 days were calendar days and not business days. At no time did either Ms. Thornton or I tell Ms. White that she could come pursue the EEO process at any time or that it was always available. We did tell Ms. White that she could utilize the FAIR process at any time because the process does not have statutory time frames.

5.      Ms. White advised us that she wanted to think about the options, but that she believed the FAIR program was the better approach because she did not believe the actions taken by management were discriminatory.

6.      At no time throughout any of my discussions with Ms. White did I either encourage or discourage Ms. White from pursuing resolution of her issues through any particular process. At no time did I ever serve as an EEO counselor to Ms. White.

7.      On or about October 11, 2005, Ms. White opted to pursue resolution of her issues through FAIR by utilizing mediation. On October 20, 2005, Ms. White signed our standard Agreement to Utilize FAIR Mediation, and initialed the section which stipulates the time frame for timely raising EEO issues in the pre-complaint process.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on *February 21, 2007*

LAURIE CYMBOR
Workplace Fairness and Equal Opportunity Division
Equal Employment Opportunity Specialist

# AGREEMENT TO UTILIZE FAIR MEDIATION

## MEMORANDUM

October 19, 2005

To: Shauna White

Re: FAIR Mediation

As you know, mediation is a *voluntary, informal,* and *confidential* process to resolve disputes.

## A. Mediation Conference: Schedule and Expected Duration

Please read, sign, date and return this Agreement to Utilize FAIR Mediation. The mediation session is scheduled for Monday, October 24, 2005, beginning at 8:30 a.m., in Conference Room 2073. It is not unusual for the mediation session to last 5-8 hours.

## B. Preserving Due Process Rights

FAIR mediations are not legal proceedings. Equally important, the mediators do not provide legal advice or legal counsel. Also important, by agreeing to mediation you are *not* waiving your rights to proceed with the formal legal dispute resolution process, provided that you file a timely complaint/administrative or negotiated grievance.

## C. What is Mediation and How Does It Work?

Success in mediation depends on all participants being prepared to participate fully in the mediation process, including presenting documentation you feel is necessary to support your position.

### 1. Phases of the Mediation Conference

The mediation conference begins with an opening statement regarding the mediators' roles as neutral third parties. The mediators are not advocates or legal representatives for or against either party. After the opening statement, the mediators will ask you to discuss your concerns and issues and the type of remedy you are seeking. The mediators will then give the responding party an opportunity to describe the dispute from her perspective. After the opening statements, the participants will enter into a joint discussion where the mediators might ask clarifying questions, and where potential solutions, if any, may be discussed.

At this point, the mediators may ask to meet privately (caucus) at least once with each participant. Information discussed in the caucus that is given to the mediators in confidence will not be shared with anyone else, subject to the limitations discussed below. Following the caucuses, the mediators may reconvene the joint session and determine if there is any area of agreement on any issue. If not, the parties will continue to negotiate, possibly re-caucusing until it is clear that a settlement is or is not going to emerge from this session

If a settlement is reached, the mediators will draft the terms of a settlement agreement, which are acceptable to all parties. For most agreements, management officials will have adequate delegations of authority to agree to the terms of the settlement. However, upon occasion, OCC management or legal personnel also will need to review and authorize a commitment to the settlement terms before they are effective.

A signed settlement agreement is intended to be binding on the parties. Accordingly, the agreement can generally be used as evidence in a later proceeding in which either of the parties alleges a breach of the agreement. It is also important that the participants understand that any written agreement reached during the course of the mediation could eventually become public record.

### 2.    Confidentiality

Confidentiality is a critical part of the process. If you tell the mediators something in private and ask them to keep it confidential, the mediators are bound by law not to disclose this information voluntarily. There are some obvious exceptions to this rule. For example, if you tell the mediators you plan to commit an act of fraud, waste, or abuse, or that you plan to commit a violent physical act, the mediators are required to share this information with appropriate authorities.

Remember that facts that were discoverable before the mediation session do not become confidential merely because they were presented during a mediation conference. It is only those things you say or write in confidence to the mediators during the mediation that will not be disclosed, unless one of the unusual exceptions discussed above applies. This means that the written agreement reached during mediation is not confidential – unless the parties agree to include a reasonable confidentiality clause.

The participants in the mediation session must agree that should the mediation not resolve the dispute, participants will not request information from the mediators in any future legal proceeding. If asked, participants must not provide information about what was discussed in the mediation session and should notify Linda Batts, OCC's WFAR Director. Ms. Batts will provide guidance about how to respond.

### D.    Conclusion

To summarize, mediation is an informal process designed to achieve a solution to the problem, which satisfies all parties and negates the need for further legal action on anyone's behalf aside from those steps that may be agreed to as part of a settlement agreement.

### E.    Signatures on Agreement to Mediate

This Agreement to Mediate must be signed and returned to the Workplace Fairness and Alternative Resolutions Office within five (5) days of receipt. A signed copy may be faxed to WFAR at 202-874-5629. Please send the Agreement to the attention of Tonya White. If you do not provide the WFAR Office with an original prior to the mediation, please bring the original to the mediation session.

Please review and initial each of the following paragraphs:

1.    _____    I understand that a claim of discrimination based upon race, color, religion, gender, national origin, age, retaliation, or disability may, at my discretion, be raised under the EEO administrative complaint process or through the negotiated grievance procedure if you are a member of the bargaining unit, but not both. I understand that I will have exercised this option at such time as I

timely file a formal complaint of discrimination with the Office of the Comptroller of the Currency or timely file a grievance in writing under the negotiated grievance process, whichever event occurs first.     However, I understand I am not precluded from seeking EEO counseling as set forth in paragraph 2.

_____ I understand that if I believe I have been discriminated or retaliated against on the basis of race, color, religion, sex, national origin, age, disability, sexual orientation, parental status or genetic information, I must request EEO counseling within 45 calendar days of the date of the matter alleged to be discriminatory or the date I became aware of the matter.

_____ I understand that if I believe I have been discriminated or retaliated against on the basis of race, color, religion, sex, national origin, age, disability, marital status or political affiliation, I may file a grievance under the negotiated grievance process with an NTEU representative within 15 work days from the date of the matter alleged to be discriminatory.

2. _____ I understand that if I am not a member of the bargaining unit and I believe that I have been discriminated or retaliated against on the basis of race, color, religion, sex, national origin, age, disability, sexual orientation, marital status or political affiliation, I may file an administrative grievance with my immediate supervisor within 15 workdays from the time I became aware of the act or situation about which I wish to grieve.  If I choose to go through the EEO complaint process, I understand my administrative grievance will be held in abeyance until the discrimination complaint has been adjudicated.

By signing below, I acknowledge that I have read, understand and agree to this mediation agreement.  (Please make a copy of this signed agreement and bring the copy with you to mediation.)

_____
Shauna White

10/20/05
Date

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JAMES L. THOMPSON, JR.,** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | **Civil Action No. 01-2105 (JDB)** |
| v. | ) | |
| | ) | |
| **CHRISTINE TODD WHITMAN,** | ) | |
| Administrator, Environmental | ) | |
| Protection Agency, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION

Plaintiff James L. Thompson, Jr., brings this employment discrimination action under

Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., against Christine Todd

Whitman in her capacity as Administrator of the Environmental Protection Agency ("EPA").

Thompson, an Assistant Special Agent in Charge ("Assistant SAC") in EPA's Philadelphia

Office of Criminal Enforcement, Forensics, and Training ("OCEFT"), raises two claims: that

EPA denied him a promotion for the position of Special Agent in Charge ("SAC") in

Philadelphia because he is African-American, and that EPA engaged in a "pattern and practice"

of discrimination by giving preferential treatment in promotions to non-African-Americans.

Complaint ¶ 1; see also id. ¶¶ 23, 24. Thompson claims that white agents were promoted in

place – did not have to relocate to another city – but African-Americans were not. Complaint ¶¶

23-24, 31.

EPA moves to dismiss Thompson's complaint for failure to exhaust administrative

1

remedies. EPA contends that Thompson did not contact an EEO counselor within 45 days of the

alleged discrimination, as required by EEOC regulations. Def. Motion to Dismiss at p. 6; see 29

C.F.R. §1614.105(a)(1). The motion raises issues implicating the Supreme Court's recent

decision on the "continuing violation" doctrine in National R.R. Passenger Corp. v. Morgan, 122

S. Ct. 2061 (2002). For the reasons stated below, EPA's motion to dismiss is granted.

**I.    Factual Background**

      Thompson has worked for EPA since 1989, when he was hired as a Criminal Investigator

in the Dallas office. Complaint at ¶ 5. In 1995, Thompson – at the time an Assistant SAC –

applied for three vacant SAC positions in Philadelphia, Dallas, and Washington. Id. at ¶ 9. He

alleges that he was told that due to an agency policy against promoting agents "in place" (in other

words, without relocating) he would not be considered for the Dallas position. Id. Thompson

was later selected for the Assistant SAC position in Philadelphia, where he currently works. Id.

      In December 1998, the SAC position in Philadelphia became available; Thompson and a

white female Assistant SAC in the Philadelphia office, Lori Hanson, applied for the position.

Pl.'s Opposition (Thompson Aff. ¶ 9). A panel conducted separate interviews lasting about three

hours. Id. In January 1999, Thompson learned that Hanson had been selected for the position.

Id. at ¶ 10. Then, in March 1999, the EPA promoted in place two other Assistant SACs, a

Hispanic male from Los Angeles and a white female from San Francisco. Id. at ¶ 12; see also Pl.

Opposition, Ex. 4 at p. 5. On or about August 1, 1999, Kim Turnpaugh, a white Assistant SAC

in Atlanta, was promoted to the SAC position in that office without having to relocate. Pl.'s

Opposition (Thompson Aff. ¶¶ 16, 18). Thompson did not apply for the SAC positions in Los

Angeles, San Francisco, or Atlanta.

On August 11, 1999, after learning of Turnpaugh's promotion, Thompson contacted a counselor in the EPA's Equal Employment Opportunity Office, complaining that a white female was selected in place for a SAC position, whereas Thompson was told years earlier that in order to be promoted, he would have to relocate. Def.'s Motion, Ex. 1 (La Fone Dec. at ¶ 5); Complaint at ¶ 9. When the initial counseling proved unsuccessful in resolving his concerns about discrimination, Thompson submitted a formal, written complaint on October 7, 1999. See Pl.'s Opposition (Thompson Aff. at p.1). On April 18, 2001, the Agency dismissed Thompson's claims, and provided him a copy of the EPA investigation report, which notified him of his right to request an appeal hearing before an EEOC administrative judge. Id. at 2-3. When Thompson did not do so, EPA issued a Final Agency Decision dismissing his complaint in accordance with 29 C.F.R. §1614.107(b) for failing to timely contact an EEO counselor within the statutorily mandated 45 days of the alleged discrimination. Id.

On October 9, 2001, plaintiff filed this action, asserting as follows:

> Plaintiff's claim, is that he was discriminated against because of his race, African American, when he was not selected for the position of GS-15 Special Agent in Charge in the Philadelphia, Pennsylvania Office of the Agency and that the non-African American employees have been given preferential treatment regarding promotions to special agent in Charge positions in the Agency.

Complaint at ¶ 1. Plaintiff explained that he had applied for the SAC position in Philadelphia, but was informed in January 1999 that he had not been selected. Id. at ¶¶ 13-14. He further alleges that "[o]n or about August 1, 1999, ASAC Kim Turnpaugh, a white female agent, was promoted to SAC of Atlanta where she had been ASAC for two years" and "was promoted in place without having to relocate." Id. at ¶ 16.

3

## II.    Discussion

Pursuant to its authority to enforce the federal employment provisions of Title VII, the

EEOC has set statutory requirements for federal employees to file a civil action. The EEOC has

established strict time limits for seeking informal adjustment of complaints, filing formal

charges, and appealing agency decisions to the EEOC. See Bowden v. United States, 106 F.3d

433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).

Regulations provide that "(a)ggrieved persons who believe they have been discriminated against

on the basis of race, color, religion, sex, national origin, age or handicap must consult a

Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R.

§1614.105(a). Moreover, "[a]n aggrieved person must initiate contact with a Counselor within

45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action,

within 45 days of the effective date of the action." 29 C.F.R. §1614.105(a)(1). If the counseling

fails to resolve the complainant's concerns, then he may file a discrimination complaint "with the

agency that allegedly discriminated against the complainant." 29 C.F.R. §1614.106(a).

"Complainants must timely exhaust these administrative remedies before bringing their claims to

court." Bowden, 106 F.3d at 437 (citing Brown v. GSA, 425 U.S. 820, 832-833 (1976)). The

failure to exhaust administrative remedies is an affirmative defense that the defendant bears the

burden of pleading and proving. Id. at 437.

At the time that this case was briefed, the law in this Circuit was that a continuing

violation is established where a plaintiff proves a "series of related [discriminatory] acts, one or

more of which falls within the limitations period, or the maintenance of a discriminatory system

both before and during the [limitations] period." Valentino v. U.S. Postal Service, 674 F.2d 56,

65 (D.C.Cir. 1982) (citations omitted). According to Thompson, he properly complained to EPA in August 1999 within 45 days of Turnpaugh's selection for the Atlanta SAC position because he identified a series of related discriminatory promotion decisions, including the promotion he did not receive to the Philadelphia SAC position in January 1999.

Thompson characterizes his cause of action as challenging a "pattern and practice" of discrimination, but it is doubtful that Thompson, as an individual plaintiff who is not part of a class action, could bring a pattern and practice claim. The Supreme Court has only recognized "pattern and practice" discrimination claims in two contexts: when the government brings suit on behalf of others or in a private class action. See International Brotherhood of Teamsters v. U.S., 431 U.S. 324, 360 (1977); Franks v. Bowman Transportation Co., 424 U.S. 747, 772 (1976). Nearly every court considering the issue has found that a pattern and practice claim is not available to a private, non-class action plaintiff.[1] It is apparent here that Thompson has alleged a "continuing violation" theory that challenges a particular "practice" at EPA. Hence, Thompson contends that the failure to promote him in place to SAC in Philadelphia, and the promotion in place of Kim Turnpaugh to SAC in Atlanta, are examples of the same on-going discriminatory

---

[1] See, e.g., Celestine v. Petroleos De Venezuella SA, 266 F.3d 343, 355 (5th Cir.2001) ("The typical pattern or practice discrimination case is brought either by the government or as a class action to establish 'that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers.'"); Lowery v. Circuit City Stores, Inc. 158 F.3d 742, 759 (4th Cir.1998), vacated on other grounds, 527 U.S. 1031 (1999) ("individuals do not have a private, non-class cause of action for pattern or practice discrimination"); Babrocky v. Jewel Food Co., 773 F.2d 857, 866-67 n.6 (7th Cir.1985) (pattern-or-practice "suits, by their very nature, involve claims of classwide discrimination"); see also Wagner v. Taylor, 836 F.2d 578, 592 n. 94 (D.C. Cir. 1987) ("The term 'pattern or practice' initially referred to suits brought by EEOC under 42 U.S.C. § 2000e-6(c) (1982), but the Supreme Court has recognized that the elements of such a case are the same as those of a private class action. . . Thus, class-wide allegations of discrimination are commonly referred to as 'pattern or practice' cases.").

practice that prohibits African-Americans from being promoted without having to relocate.

Defendant claims that Thompson did not raise his complaint with EPA within the 45-day period required by 29 C.F.R. § 1614.106(a). Thompson raised his complaint with EPA on August 11, 1999 – ten days after EPA promoted Kim Turnpaugh in Atlanta without requiring her to relocate. Thompson had not applied for the Atlanta position, nor had he applied for positions in Los Angeles or San Francisco, where EPA promoted a white woman and an Hispanic male without requiring relocation. Thompson had applied (and been rejected) for the SAC position in Philadelphia, some seven months before he raised a complaint with EPA on August 11, 1999. To get around the fact that he did not file a complaint within 45 days of EPA's refusal to promote him, Thompson argues that EPA's practice of only promoting non-African Americans in place is a "continuing violation" that reoccurred when EPA promoted Turnpaugh on August 1, 1999.

However, the Supreme Court's recent decision in <u>National R.R. Passenger Corp. v. Morgan</u>, 122 S.Ct. 2061 (2002), is fatal to any continuing violation theory that might otherwise save Thompson's claims. In <u>National R.R.</u>, the Court held that, under Title VII, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 122 S.Ct. at 2072. As the Court explained, "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice'" for which a timely complaint must be filed. <u>Id.</u> at 2073. The Court rejected the contention that a claim based upon a discrete discriminatory act occurring outside the limitations period can be saved from untimeliness if it is "plausibly or sufficiently related" to another discriminatory act for which a timely claim has been filed. <u>Id.</u> at 2072-73. Rather, each discrete discriminatory act, such as a failure to promote, "starts a new clock for filing charges alleging that act." <u>Id.</u> at 2072.

6

In light of National R.R., Thompson's claims cannot survive. On the very first page of his complaint, he alleges that he was not selected for the SAC position in Philadelphia. Complaint ¶ 1. "The essence of my complaint," Thompson stated in his affidavit attached to his EEO complaint, "is that I was discriminated against based on my race (African American) when I was not selected for the Special Agent in Charge position in Philadelphia and therefore was not 'selected in place' from within the Philadelphia Office." Def. Ex. 3, Thompson Affidavit at p. 1. Thompson learned in January 1999 that EPA selected Lori Hanson, a white female who was also an Assistant SAC in Philadelphia at the time.[2] Given that Hanson was promoted without having to relocate, Thompson certainly knew (or should have known) that a white applicant had been promoted to a SAC position "in place."[3]

Because Thompson did not contact an EEO office until August 11, 1999 – more than six months after he learned that Hanson had been promoted in place – his claim relating to the Philadelphia promotion was not raised within 45 days of the alleged discriminatory act. As the applicable regulation states, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1) (emphasis added).

---

[2] Complaint at ¶¶ 13-14; see also Pl.'s Opposition, Ex. 4., p. 10-11.

[3] Thompson claims that he asked his supervisors in Philadelphia why he was not promoted, but they never told him. He therefore contends that he was not aware that the reason for the denial of his promotion was discriminatory. But Thompson was certainly aware when he was denied the promotion that a white person was promoted in place – an issue which is the heart of his discrimination claim. Moreover, in his complaint to the agency, Thompson stated that "shortly after [learning in January 1999 that he would not be promoted] I contacted an attorney . . . to assess my ability to file an EEO complaint against what I perceived as racial discrimination." Pl.'s Opposition, Ex. 4 (Complaint at p. 12). Hence, plaintiff believed he had been discriminated against, but chose not to file a complaint.

Thompson was the "aggrieved person" when he was denied the SAC promotion in Philadelphia

in January 1999. Thompson did not complain about this discrimination until August 11, 1999 –

far past the 45-day time limit. The "matter alleged to be discriminatory" is the denial of the

Philadelphia promotion in January 1999, not Turnpaugh's promotion in Atlanta in August 1999

since Thompson did not apply for that job. No matter how it is construed, there was no action or

conduct that affected Thompson within 45 days of his complaint to the EEO office. Even in a

claim of continuing violation, the same effective date would trigger the 45-day limitations period

in the case of an ongoing pattern of discrimination because, in such a case, the "<u>deadlines run</u>

<u>from the time of the discriminatory act</u>." <u>Young v. National Ctr. for Health Servs. Research</u>, 828

F.2d 235, 237 (4th Cir.1987) (emphasis added). The only actionable discriminatory act involving

Thompson was the denial of a promotion in January 1999.

 Nor is Thompson's claim saved because he contacted an EEOC counselor within 45 days

of Turnpaugh's promotion to the SAC position in Atlanta on August 1, 1999. Thompson has

lodged this claim under the rubric of a "pattern and practice of discrimination." <u>See</u> Complaint at

¶¶ 22-28. To deflect attention from the fact that he first contacted an EEO counselor more than

six months after the denial of the Philadelphia promotion, Thompson challenges the overall

"process" and "policy" of promotions at EPA:

> [T]he complaint filed and accepted by the [EPA] did not involve the position in
> Philadelphia but the position in Atlanta thus, it is clear that the events surrounding
> the selection for the position in Philadelphia were not at issue but the process for
> the selection in Atlanta and the policy of selecting in place non African American
> Special Agents in Charge.

Pl.'s Opposition at p. 3. "In fact," he adds, "the claim as to the incident in Philadelphia was only

one more incident which showed the methods applied to African American applicants for a

position while not applied to the non African American applicants." Pl.'s Opposition at p. 4.

As his complaint filed with the EEO stated, Turnpaugh's promotion on August 1, 1999, "was the latest incident that triggered my decision to file this EEO complaint." Pl.'s Opposition, Ex. 4 ("Complaint and Chronology" at p. 14). But Turnpaugh's promotion did not discriminate against Thompson, because he did not even apply for that position. In light of National R.R., a Title VII plaintiff's claim must arise out of a "discrete discriminatory act," and Thompson's pattern and practice claim cannot stand. The only "discrete discriminatory act" that involves Thompson was his non-promotion to the SAC position in Philadelphia in January 1999 – more than six months before he complained to the EEO office.

Plaintiff also argues that the Court should allow equitable tolling of the 45-day time limit to ensure the "broad humanitarian and remedial purposes underlying the statute." Pl.'s Opposition at p. 10. Plaintiff bears the "burden of pleading and proving in the district court any equitable reasons for his failure to meet the [45-day] requirement." Saltz v. Lehman, 762 F.2d 207, 209 (D.C. Cir. 1982). The Supreme Court has cautioned that equitable doctrines should be "applied sparingly." National R.R., 122 S.Ct. at 2072; see also Washington v. WMATA, 160 F.3d 750, 753 (D.C. Cir. 1998) (the "court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances"). Thompson has not demonstrated the requisite circumstances for application of equitable doctrines tolling the 45-day filing period under the statute.

It is true that the requirements for timely filing of administrative claims "are not jurisdictional prerequisites to suit, but are more 'like a statute of limitations, [which] is subject to waiver, estoppel, and equitable tolling.'" Jarrell v. U.S. Postal Service, 753 F.2d 1088, 1091

9

(D.C. Cir. 1985) (quoting <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982)). The doctrine of equitable estoppel "prevents a defendant from asserting untimeliness where the <u>defendant</u> has taken active steps to prevent the plaintiff from litigating in time." <u>Currier v. Radio Free Europe/Radio Liberty, Inc.</u>, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (emphasis in original). The principle of equitable tolling "allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." <u>Id.</u>[4] In <u>Washington v. WMATA</u>, the court noted that equitable tolling has generally been allowed in situations where the claimant has "actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," but that courts have "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." 160 F.3d at 752.

Thompson certainly should have been aware of EPA's alleged pattern and practice of discrimination no later than January 29, 1999, when he was denied a promotion in favor of a white person who was promoted in place. Indeed, Thompson also should have been aware that two other non-African Americans were promoted in place in March 1999. He has not alleged

---

[4] Certain equitable bases for extending the 45-day time limit in an administrative context are identified at 29 C.F.R. § 1614.105(a)(2):

> The agency or the Commission shall extend the 45-day time limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

10

any conduct by defendants showing that he was duped into sitting on his claims. In fact, as

Thompson's own EEO complaint shows, he contacted an attorney "shortly after" he learned in

late January 1999 that he was denied a promotion, but chose not to pursue a claim because he

"did not want to go through the stress of fighting a discrimination claim." Pl.'s Opposition, Ex. 4

(Complaint at p. 12). In <u>Williams v. Munoz</u>, 106 F.Supp.2d 40 (D.D.C. 2000), the court

specifically rejected a similar claim for equitable tolling:

> [S]he asserts that she only later became aware of the <u>reasons</u> for her non-
> promotion. That theory was rejected in <u>Cones v. Shalala</u>, 945 F.Supp. 342, 347
> (D.D.C. 1996), <u>rev'd on other grounds</u>, 199 F.3d 512 (D.C. Cir. 2000), and will be
> rejected here as well. Ms. Williams knew that she had not been promoted and that
> her non-African American co-workers had been promoted. She reasonably should
> have suspected that there might be discriminatory reasons, and should have
> investigated. This is not a sufficiently 'extraordinary' case to warrant equitable
> tolling.

106 F.Supp.2d at 43. Thompson makes the same argument here for not raising a claim back in

January 1999 because his supervisors had not told him <u>why</u> he was not promoted. Thompson

knew, however, that the promotion went to a white person, and that she did not have to relocate

for the job. As in <u>Munoz</u>, then, there is no basis for equitable tolling here.

## CONCLUSION

Thompson has not complied with the 45-day statutory time limit within which an

aggrieved person must initiate contact with an EEO counselor and raise a claim. He waited more

than six months after the denial of the Philadelphia promotion to raise a claim, and he never

applied for the Atlanta or other positions he references in his complaint. Furthermore, he cannot

assert a "continuing violation" in light of the Supreme Court's recent decision in <u>National R.R.</u>,

which requires a "discrete discriminatory act" within the statutory time limit. Finally, Thompson

has not met his burden of showing entitlement to equitable tolling under the strict requirements

for application of that doctrine. Accordingly, EPA's motion to dismiss is granted. A separate

order has been issued on this date.


Signed this __28___ day of August, 2002.


_____/s_____
John D. Bates
United States District Judge


Copies to:

Karl W. Carter, Jr.
2000 L Street, NW
Suite 200
Washington, D.C. 20036
Counsel for plaintiff

Stratton C. Strand
United States Attorney's Office
Judiciary Center Building
10th Floor
555 Fourth Street, NW
Washington, D.C. 20001
Counsel for defendant